LAKE *v.* PERE MARQUETTE RAILROAD CO.[1]

1. Labor Liens—Attachment—Service on Carrier.
   Under section 10761, 3 Comp. Laws, a sheriff may attach a car load of shingles for labor liens by serving a copy of the writ

[1] Rehearing denied March 9, 1903.

upon a station agent of a railroad company in whose pos_session the shingles are for the purpose of transit to a place within this State; although, at the time, they are in a different county from that in which the service is made.

2. SAME—DELIVERY.
  In such case the railroad company should deliver the attached property at once to the sheriff.

3. SAME—CONSTRUCTION OF STATUTE.
  The statute, in providing that no sheriff shall seize and detain such property while in transit, indicates the legislative intent to permit it to be attached by service of the writ upon the company.

4. SAME—CONSTITUTIONAL LAW—COST OF CARING FOR ATTACHED PROPERTY.
  The statute is not unconstitutional in not providing for the payment to the company of the expense of caring for the property from the time of service of the writ to the time the sheriff makes a demand for the property, since, in the case of a carrier, delivery should be made at once to the sheriff.

Error to Clare; Dodds, J.  Submitted December 2, 1902.  (Docket No. 127.)  Decided January 27, 1903.

Trover by Sheldon Lake against the Pere Marquette Railroad Company.  From a_ judgment for plaintiff, defendant brings error.  Affirmed.

*Frederick W. Stevens* (*Charles McPherson*, of counsel), for appellant.

*John Quinn* (*C. W. Perry*, of counsel), for appellee.

CARPENTER, J.  On an agreed statement of facts, the court below held the defendant liable to plaintiff for the conversion of a car load of shingles, and assessed his damages at the sum of $100.20.  On February 19, 1901, while this car load of shingles was being carried over defendant's road from Harrison, in Clare county, to Flint, in Genesee county, Mich., and less than two hours before it reached Flint, plaintiff, the deputy sheriff of the county of Clare, served on defendant's station agent at Harrison

eight copies of writs of attachment issued to enforce liens for labor in pursuance of Act No. 229 of the Public Acts of 1887, the same being 3 Comp. Laws 1897, §§ 10756–10770, under the claim that said service attached the car load of shingles in question by virtue of a provision in section 6 of said act, hereinafter set forth. The station agent at Flint, having no notice of said attachment suits, delivered the shingles in controversy to the consignee about nine hours after said service on the company's agent at Harrison. The attachment suits proceeded regularly to judgment. On October 9, 1901, plaintiff demanded the shingles in controversy, and defendant refused to comply with said demand.

The defendant asks this court to reverse the judgment of the court below on two grounds: *First*, that the service of the writ in question was not authorized by law; *second*, that, if such service was authorized, the law is unconstitutional.

1. That portion of the law relative to the service of the writ in question is found in section 6 of the act (3 Comp. Laws 1897, § 10761), and reads as follows:

"*Provided*, that no sheriff or other officer shall seize upon and detain any such property or products when in transit from the place where banked or deposited for shipment on the railroad, or for flotage in the stream or streams, or for transportation on the waters of this State, when such place of destination is within this State; but in case such products are in transit, or are in possession of any booming company or other person or corporation for the purpose of being driven or sorted and delivered to the owners, or to satisfy any statutory lien, then levy and attachment of said property or products may be made by serving a copy of said attachment upon the person or corporation driving or holding the same, who shall, from the time of such service, be deemed to hold the same both on their own behalf and in behalf of said sheriff or other officer, to the extent of said attachment lien, until the same can be driven and sorted out; and, when driven or sorted out, said sheriff or other officer may receive said products from said person or corporation, and the statutory lien of said person or corporation shall not be released by

the holding of said sheriff or other officer; and in case of sale by the sheriff or other officer on execution, and when the proceeds of sale shall not be sufficient to satisfy all liens in full, then such proceeds shall be distributed *pro rata* to all parties in interest, under the special order and direction of the court having jurisdiction in said attachment."

Defendant contends that the proper construction of this language permits service of writs of attachment, in the manner attempted in this case, only when forest products are in the possession of some person or corporation for the purpose of being driven or sorted out, and therefore does not permit such service when a railroad company, as in this case, is merely carrying them for the purpose of making a delivery. This contention is based on the latter part of the language above quoted. This language, it is to be observed, was copied verbatim from 2 How. Stat. § 8417, contained in an act giving a lien only for "services in cutting, skidding, falling, hauling, scaling, banking, driving, running, rafting, or booming any logs, timber, cedar posts, telegraph poles, railroad ties, tan bark, shingle bolts or staves." That act was repealed, and its application extended to "lumber, shingles, and all other forest products," by the act under consideration. The prohibition of an actual seizure of products deposited for shipment on the railroad sufficiently indicates the legislative intent to permit them to be attached by service of the writ on the company. Otherwise, we are forced to the conclusion, forbidden by the statute, that the legislature intended to exempt forest products altogether from attachment while in the possession of a railroad company.

Does the language of the latter part of the clause under consideration make this intent altogether ineffective? The statute reads (the brackets are inserted by us for the purpose of this opinion):

"In case such products are in transit [or are in possession of any booming company or other person or corporation for the purpose of being driven or sorted and deliv-

ered to the owners, or to satisfy any statutory lien], then levy and attachment of said property or products may be made by serving a copy of said attachment upon the person or corporation driving or holding the same."

If we omit the clause inclosed in brackets, as, clearly, ·we may for the purpose of construction, authority is given (and this justified the service under consideration) to attach forest products in transit by serving a copy of said attachment upon the corporation holding the same. Thus far, then, there is no difficulty. The difficulty arises from the words following, namely:

"Who shall, from the time of such service, be deemed to hold the same both on their own behalf and in behalf of said sheriff or other officer, to the extent of said attachment lien, until the same can be driven and sorted out; and, when driven or sorted out, said sheriff or other officer may receive said products."

Does this language restrict the right to attach "by service of a copy of the writ" to cases where the products are yet to be driven or sorted out? The statute expressly authorizes the service in three cases: (a) Where the products are in transit; (b) where they are in the possession of any booming company or other person or corporation for the purpose of being driven or sorted and delivered to the owners; (c) where they are held to satisfy any statutory lien. The clause which creates the entire difficulty is that permitting the custodian of the attached products to hold the same, and to continue his custody "until the same can be driven and sorted out," and has application to but one of the cases in which this method of attachment is authorized. We are clearly not warranted in confining to one case the right expressly given in three, because provision is made for the continuance of the custodian's possession in that one only. It is rather to be presumed that the legislature thought that this was the only case in which the attached products would not be in a condition for immediate delivery, and therefore made provision for no other such case. It would have been

wise for the legislature to state explicitly when products attached in transit should be delivered; but the legislative intent that such delivery should take place at once is clearly manifest, and only a species of technical reasoning would warrant us in construing the statute as though it were not stated.

2. It is claimed that the statute is unconstitutional, because "the carrier must retain possession until the sheriff makes demand for delivery, it can only do so at considerable expense," and no provision for the payment of this expense is made. It is a sufficient answer to this contention to say that the statute, in our judgment, as already indicated, intends the sheriff to take immediate possession of the attached products. From the time of the attachment, the attached products are in his official custody, constructively, if not actually, and express authority is given the officer to "pay the storage on such products during the time that he shall have the custody thereof by virtue of such writ of attachment, * * * which shall be included and taxed in the bill of costs or disbursements." 3 Comp. Laws 1897, § 10769. In the case at bar, this provision has no application. Defendant could make no claim for storage on the ground that plaintiff did not demand possession for several months. By delivering the products to the consignee in disregard of plaintiff's rights, defendant not only lost all right to compensation for their storage, but made itself legally chargeable for their conversion.

The judgment of the court below is affirmed.

The other Justices concurred.